IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Charles E. Seastrunk Jr.,<br>as personal representative of<br>the Estate of Joshua Scott Blankenship,<br><br>Plaintiff,<br><br>vs.<br><br>The United States of America,<br><br>Defendant. | C/A No. 3:12-cv-03453-JFA<br><br><br><br>**ORDER** |

In this medical malpractice case brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, the United States has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 62.  Charles E. Seastrunk Jr. opposes the motion.  ECF No. 63.  The court heard oral arguments on May 21, 2014.

I.

Mr. Seastrunk is the grandfather and personal representative of the estate of Joshua Scott Blankenship, a United States Marine who served two tours of duty in Iraq before being honorably discharged in June 2009.  On July 13, 2010, Mr. Blankenship committed suicide in a friend's home by means of a self-inflicted gunshot wound to the head.

In the aftermath of the tragedy, Mr. Seastrunk filed this wrongful death action against the United States under the FTCA, alleging that the United States, through health care providers employed by the Department of Veterans Affairs at the William Jennings Bryan Dorn V.A. Medical Center ("VAMC") in Columbia, South Carolina, committed medical malpractice in the treatment of Mr. Blankenship.  Mr. Seastrunk alleges that his 25-year-old grandson's suicide was

1

a proximate result of the VAMC's breach of the prevailing standards of care.  In an affidavit, Mr.

Seastrunk's expert witness, Dr. David R. Price, opines that health care providers at the VAMC:

> [D]eviated from the applicable standards of care for physicians treating individuals
> at high risk of suicide, and from the VAMC's own policies and procedures, by
> failing to emergently admit him for voluntary psychiatric care, failing to notify his
> relatives of his imminent danger to himself and/or pursue his involuntary
> commitment due to his mental illness, alcoholism and his suicidal risk.

Price Aff. 2–3, ECF No. 30-1.  In Dr. Price's opinion, Mr. Blankenship presented several

predictors of suicide and those "were not properly addressed, or were not addressed at all by the

VAMC."  *Id.* at 3–4 (citing *Assessment and Prediction of Suicide* (Ronald W. Maris *et al.*, eds.)).

## II.

While state law governs the disposition of an FTCA case, federal law defines the

procedure.  Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper

when there is no genuine dispute as to any material fact and the moving party is entitled to

judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material fact

is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond

Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986)).  A dispute of material fact is "genuine" if sufficient evidence favoring the

non-moving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S.

at 248–49.  The moving party bears the initial burden of informing the court of the absence of a

genuine dispute of material fact.  *Celotex*, 477 U.S. at 323.  However, that showing does not

have to be made by expert testimony.  *See Pendergrass v. United States*, 2013 WL 518842 at *3

(D.S.C. Feb. 12, 2013) (concluding that sworn declarations and medical records submitted by a

defendant in support of its motion for summary judgment suffice).  If the moving party meets

that burden and a properly supported motion is before the court, the burden shifts to the non-

moving party to "set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 323. While all inferences must be viewed in a light most favorable to the non-moving party, he "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Thus, the court should grant a properly supported motion for summary judgment unless the non-moving party comes forward with evidence that, were the case at the directed verdict stage, could justify a reasonable trier of fact to find for the non-moving party.

III.

A plaintiff has a cause of action against the government under the FTCA if he also would have a cause of action under state law against a private person under like circumstances. 28 U.S.C. § 1346(b); *Corrigan v. United States*, 815 F.2d 954, 955 (4th Cir. 1987). In this case, South Carolina law of medical malpractice applies. To establish liability in a medical malpractice case, a plaintiff must prove by a preponderance of the evidence:

(1) The generally accepted standards, practices and procedures in the community that would be exercised by competent physicians in the same field under similar circumstances;
(2) That the physicians or medical personnel in question negligently deviated from the generally accepted standards, practices, and procedures;
(3) That the negligent deviation from the generally accepted standards, practices, and procedures was a proximate cause of the plaintiff's injury; and
(4) That the plaintiff was injured.

*Dumont v. United States*, 80 F.Supp.2d 576, 581 (D.S.C. 2000) (internal citation omitted). Furthermore, the plaintiff "must establish by expert testimony both the standard of care and the defendant's failure to conform to the required standard, unless the subject matter is of common knowledge or experience so that no special learning is needed to evaluate the defendant's conduct." *Martasin v. Hilton Head Health Sys. L.P.*, 613 S.E.2d 795, 799 (S.C. 2005) (internal citation omitted).

The South Carolina Supreme Court has explained that the inquiry is the same in the context of a suicide. "[A] professional's duty to prevent suicide requires the exercise of that degree of skill and care necessary to prevent a patient's suicide that is ordinarily employed by members of the profession under similar conditions and circumstances." *Hoeffner v. The Citadel*, 429 S.E.2d 190, 194 (S.C. 1993) (internal citations omitted). "Further, the question whether the duty has been breached turns on the professional's departure from the standard of care rather than the event of suicide itself." *Id.*

With this legal framework as a backdrop, the United States moves for summary judgment, arguing that Mr. Seastrunk has failed to establish a case of medical malpractice because the expert opinion asserted by Dr. Price rests on misunderstandings of the underlying facts. First, the United States submits that Dr. Price did not know that Mr. Blankenship "had declined to allow his family access to his medical information on three separate occasions, stating on the third that he will be the one to decide what information they receive." Def.'s Mot. Summ. J. 11, ECF No. 62-1. Second, the United States points out that Dr. Price did not know about the testimony of Mr. Blankenship's mother "corroborating the VAMC records that [Mr. Blankenship] wanted to wait until after a few weeks, until after [his cousin's] wedding, to enter treatment . . ." *Id.* at 12. Third, the United States contends that Dr. Price was mistaken on the VAMC's policy for emergency involuntary commitment. *Id.* at 12–13.

In opposition, Mr. Seastrunk contends that genuine disputes over material facts preclude summary judgment.[1] Based on the evidence in the record, Mr. Seastrunk argues that a

---

[1]    Mr. Seastrunk submits that:

    1. There is ample evidence the VAMC failed to admit [Mr. Blankenship], voluntarily    or otherwise, in violation of the VAMC's procedures for high risk individuals and in violation of prevailing standards of care despite the VAMC's knowledge that [Mr. Blankenship] posed a high risk of harm to himself or others.

reasonable trier of fact could conclude that the United States breached the applicable standards of care and the VAMC's procedures for treating individuals at high risk of suicide, and also breached those standards and procedures when Mr. Blankenship was not admitted, voluntarily or involuntarily, "despite the VAMC's knowledge that [Mr. Blankenship] posed a high risk of harm to himself or others."  Pl.'s Resp. to Def.'s Mot. Summ. J. 8, ECF No. 63.  In particular, Mr. Seastrunk points out that, a week before his suicide, [Mr. Blankenship] told a VAMC social worker that, the week before that, he "'drank so much he thought about driving his truck into a busy intersection.'"  *Id.* at 8 (quoting VAMC Med. R. 00038, ECF No. 63-3).  Additionally, Mr. Seastrunk submits that the VAMC records show that Mr. Blankenship "was a sufficient threat to himself that the VAMC was 'in the process of … placing [him] on high risk list'" and placing Mr. Blankenship in "'residential dual diagnosis treatment.'"  *Id.* (quoting VAMC Med. R. 00031-00033, ECF No. 63-3) (alterations in original).

Having carefully considered the arguments of the parties and the applicable law, the court finds that Mr. Seastrunk has not met his burden to establish a prima facie case of medical malpractice.  Mr. Seastrunk has failed to provide evidence of the prevailing standard of care, as is required under South Carolina law.  "Regardless of the area in which the prospective expert witness practices, he must set forth the applicable standard of care . . . and he must demonstrate

---

2. There is ample evidence that the VAMC failed to notify [Mr. Blankenship's] relatives or friends of his imminent danger to himself or others.

3. There is ample evidence that the VAMC failed to properly address the suicidal risk apparent throughout [Mr. Blankenship's] VAMC records and reflected in the high number of positive suicidal indicators displayed by [Mr. Blankenship] during his treatment by the VAMC.

4. There is ample evidence that the injuries and damages incurred by Plaintiff, namely [Mr. Blankenship's] death by suicide, were the proximate result of the VAMC's deviation from the prevailing standards of care.

Pl.'s Resp. to Def.'s Mot. Summ. J. 7–8, ECF No. 63.

to the court that he is familiar with the standard of care." *David v. McLeod Reg'l Med. Ctr.*, 626 S.E.2d 1, 5 (S.C. 2006).

Although Dr. Price sets forth in his affidavit certain actions *not* taken by the VAMC staff, those references are not specific enough for this court to infer the prevailing standard of care. *See McLeod*, 626 S.E.2d at 4 ("In South Carolina, medical malpractice actions require a greater showing than generic allegations and conjecture."). Nowhere in the affidavit does Dr. Price outline a standard. Additionally, it is clear from the record that, in rendering his opinion, Dr. Price was mistaken about the underlying factual circumstances in at least two respects. First, he opines that the United States breached the standard of care by "failing to notify his relatives of his imminent danger to himself," but the medical record shows that Mr. Blankenship repeatedly declined family involvement. Second, Dr. Price submits that the United States "fail[ed] to emergently admit him for voluntary psychiatric care," but the record shows that Mr. Blankenship expressed wishes to postpone any further in-patient treatment until after a wedding. The court is aware that Dr. Price did not have the benefit of completed discovery when he filed his affidavit as required under South Carolina law. When faced with this motion for summary judgment, however, Mr. Seastrunk has failed to provide any additional testimony from Dr. Price to establish the prevailing standard of care. This deficiency was not cured in Dr. Price's deposition. In the deposition, once it was clear that Mr. Blankenship had postponed in-patient treatment and had declined family intervention, Dr. Price testified, "I would have tried to talk him into a voluntary commitment first. I would have gotten him in and pursued voluntary." Price Dep. 52:7–52:10, Feb. 3, 2014, ECF No. 63-7. When pressed, Dr. Price testified that involuntary commitment should be considered when "you think the person is a threat to himself or others.

It's the universal standard, really." Price Dep. 54:20–54:22. Even viewing all inferences in a light most favorable to Mr. Seastrunk, these statements are not enough.

IV.

In light of the foregoing, the court finds that Mr. Seastrunk has not carried the burden of establishing a prima facie case. Setting forth the standard of care is a necessary foundation for a medical malpractice case in South Carolina. Without meeting this prong, Mr. Seastrunk cannot show that any action or inaction of the United States constituted a breach. If the case were at the directed verdict stage, the court is of the opinion that a reasonable trier of fact could not find, by a preponderance of the evidence, any actionable medical malpractice. Accordingly, the court hereby grants the United States' motion for summary judgment.

IT IS SO ORDERED.

Joseph F. Anderson, Jr.

June 5, 2014                                Joseph F. Anderson, Jr.
Columbia, South Carolina                   United States District Judge